KERMITH MORRIS STRICKLAND v. DRI-SPRAY DIVISION EQUIPMENT DEVELOPMENT, A CORPORATION, AND LEAWON F. JOHNSON, D/B/A JOHNSON PAINT AND WALLPAPER AND RANSBURG CORPORATION, A CORPORATION AND SPRAYING SYSTEMS CO., INC., A CORPORATION

No. 8011SC466

(Filed 3 March 1981)

Negligence § 29.2– use of paint sprayer – absence of warnings

 In an action to recover for injuries to plaintiff's hand sustained when he was struck by a discharge from an airless paint sprayer, the trial court properly entered summary judgment for defendants since plaintiff had knowledge of the risks involved in the use of the spray gun, and defendants were therefore not under a duty to warn plaintiff concerning the danger involved in spraying the spray gun at a part of his body.

APPEAL by plaintiff from *Preston, Judge.* Judgment entered 5 March 1979 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 11 November 1980.

This action arises out of an accident which occurred on 12 February 1975. Plaintiff's right hand was severely injured when struck by a discharge from an airless paint sprayer. At the time the accident occurred, plaintiff was using the paint sprayer to paint the interior of a drying kiln belonging to his employer, Smithfield Lumber Company.

On the morning of 11 February 1975, plaintiff and his immediate superior at the lumber company, Donald Ray Allen, went to defendant, Johnson Paint and Wallpaper, and rented therefrom the airless paint sprayer which was involved in this incident. They received instruction from Keith Johnson, an employee of defendant store, in the proper methods of use of the sprayer.

The sprayer consisted of a gasoline powered combustion engine which supplied the pressure which propelled the paint from the spray gun to the surface. This engine was attached by a long hose to a nozzle type device from which the paint was emitted. The nozzle was comparable to a pistol or the spray attachment to a garden hose. The nozzle was equipped with a trigger which, when depressed, opened the nozzle and allowed the paint to be discharged at high speed.

Plaintiff began spraying the interior of the kiln, using the rented sprayer, at approximately 1:00 p.m. on the afternoon of the eleventh. Plaintiff did the actual spraying of the walls of the kiln, assisted by fellow employee, Benny Sullivan, who tended the gasoline engine and refueled the sprayer with thinned paint.

On the eleventh, plaintiff used the sprayer for approximately four hours without the occurrence of any mechanical problems. The nozzle did become clogged with paint residue some twelve times during the afternoon. When these paint build-ups occurred, plaintiff would have Sullivan stop the sprayer engine. Plaintiff would then remove the nozzle tip with a wrench and clean it with kerosene. The clogging of paint in the sprayer nozzle was a normal occurrence in paint sprayers of this sort, and it did not represent a malfunction peculiar to this particular machine. Due to the unevenness of paint mixtures, this type of clogging in paint sprayers was expected. When plaintiff and Sullivan completed their painting on the afternoon of the eleventh, they flushed and cleaned the sprayer.

At 7:30 the following morning, plaintiff resumed spraying the kiln. Over the course of the morning, the nozzle became clogged six or eight times. At around 11:00 a.m. plaintiff was on a raised walkway spraying the kiln's ceiling, when the machine's nozzle became clogged. Plaintiff descended from the walkway to clean the nozzle, carrying the sprayer in his right

hand. He asked Sullivan to turn the engine off. The accident occurred while Sullivan was approaching the machine to do so.

When plaintiff reached the floor of the kiln from the walkway he sat down on a concrete slab. He laid the spray gun in his lap, while he lit a cigarette with his left hand. He had the tip of the sprayer nozzle cupped in the upper palm of his right hand, and the gun discharged into plaintiff's right hand causing the injury. Plaintiff was unaware of what made the gun discharge.

Following the accident, Donald Ray Allen and Sullivan completed the spraying of the kiln. They used the same paint sprayer that had injured plaintiff to finish the job. Allen experienced no malfunctions while using the sprayer other than occasional clogging.

Prior to trial both defendants made motions for summary judgment pursuant to G.S. 1A-1, Rule 56. The court considered the party's pleadings, the deposition of plaintiff, and affidavits of Benny Sullivan, Donald Ray Allen, David L. Fisher, and Jerry Grice. It found that both defendants had satisfied their burden in establishing the lack of a triable issue of material fact, and granted their motions.

On 7 February 1980, this Court allowed plaintiff's petition for writ of certiorari.

*Hugh C. Talton, Jr., for plaintiff appellant.*

*Johnson, Patterson, Dilthey and Clay, by Ronald C. Dilthey and Paul L. Cranfill, for defendant appellee Leawon F. Johnson, d/b/a Johnson Paint and Wallpaper.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by C. Ernest Simons, Jr., for defendant appellee Spraying Systems Co., Inc.*

MORRIS, Chief Judge.

Plaintiff asserts that it was error for the court to allow either motion for summary judgment. He contends that there were triable issues of fact as to whether defendants knew of prior injuries resulting from the use of this model sprayer, and whether defendants warned plaintiff of any danger in using the sprayer.

Due to the similarity of the contentions of the parties and the applicable law, we will consider the court's action with regard to each of defendants' motions together.

Rendition of summary judgment is conditioned upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972) and cases there cited. The defendants in the instant case have fulfilled the burden of clearly establishing the lack of any triable issue of fact.

Only in exceptional negligence cases is summary judgment appropriate.

> Nonetheless, summary judgment is proper in negligence actions where it appears that there can be no recovery even if the facts as claimed by plaintiff are true. *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972); *Pridgen v. Hughes*, 9 N.C. App. 635, 177 S.E. 2d 425 (1970).

*Kiser v. Snyder*, 17 N.C. App. 445, 450, 194 S.E. 2d 638, 641, *cert. denied* 283 N.C. 257, 195 S.E. 2d 689 (1973).

Plaintiff presented no evidence of hidden defects or dangers in this paint sprayer. He complained that the paint sprayer did not have adequate safeguards, and that defendants had failed to warn him of dangers involved in the use of the sprayer.

The evidence before the court tended to show that prior to the accident plaintiff was aware of the safety hazards involved in the use of such a pressurized paint sprayer. In his sworn deposition plaintiff stated:

> On the morning of February 11, 1975, Mr. Allen and I went to Johnson Paint and Wallpaper. I had a general idea of what kind of equipment they would use to spray the inside of the dry kiln.
>
> I do not know who we talked to at Johnson Paint and Wallpaper. I first saw the machine when a boy showed it to us. I recognized the machine as a paint sprayer. I had used a paint sprayer about a dozen times before this occasion. The ones I used, operated electrically and had an extension hose. The one involved in this incident operated with a

gasoline engine and had a pipe-type device which sat down in the bucket of paint.

The paint sprayers I had previously used had a similar type nozzle or pistol grip like the one involved in this incident. In the actual spraying of the paint, the machine would be no different than the other sprayers I had used.

. . .

Q. Now, after seeing the machine and you, yourself, having operated maybe a dozen, did you have any question in your mind on the use of this machine, yourself?

A. No, sir.

Q. When you left with the machine, then I take it, you felt you had an understanding of how to use the machine?

A. Right.

. . .

During the day of February 11, I worked with the machine at least four hours that day. At no time during that day did I run into any mechanical problems with the machine itself.

. . .

Having used a spray gun on at least a dozen prior occasions and having used it on the afternoon of February 11, I knew that if I pulled the trigger on the nozzle and placed my hands in front of the nozzle, it would spray my hands with paint.

Basically, the nozzle on the end of this spray gun has the appearance of a pistol. If you pull the trigger on a pistol and you have got your hands in front of it, you are going to get shot. And the same thing is true of this spray gun.

. . .

Q. Now, when you use the gun and pull the trigger and spray, it comes out in a hissing sound, doesn't it?

A. Yes, sir.

Q. And that you knew was from pressure.

A. Right.

Q. At any time while you used the machine, did you put your hands in front of it?

A. No, sir.

Q. Why didn't you?

A. It's not safe.

Q. You knew that before it stopped up.

A. Yes, sir.

. . .

When I first started using the machine, I noticed that it had more force than the other paint sprayers I had used. I noticed that on the 11th when I first began using it. This was a gas operated engine. At no time did anything unusual happen with respect to the operation of the machine up to the moment the accident occurred.

The issue narrows to the question of whether, under the circumstances, defendant was under a duty to warn plaintiff concerning the danger involved in spraying the spray gun at a part of his body. "When a person has knowledge of a dangerous condition, a failure to warn him of what he already knows is without significance." *Jones v. Aircraft Co.*, 253 N.C. 482, 491, 117 S.E. 2d 496, 503 (1960). *See Sellers v. Vereen*, 267 N.C. 307, 148 S.E. 2d 98 (1966); *York v. Murphy*, 264 N.C. 453, 141 S.E. 2d 867 (1965); *Spell v. Contractors*, 261 N.C. 589, 135 S.E. 2d 544 (1964); *Flores v. Caldwell*, 14 N.C. App. 144, 187 S.E. 2d 377 (1972).

We are of the opinion that the evidence here, even when considered in the light most favorable to plaintiff, establishes that plaintiff knew that if the spray gun discharged while he had his hand placed in front of its nozzle, it would cause serious injury to his hand. This would appear to be common knowledge to anyone using such a pressurized sprayer for the first time, but even more so for someone like plaintiff who admittedly had used similar spray guns on many past occasions, and who had used the very same spray gun for approximately seven hours before the accident.

Plaintiff had knowledge of the risks involved in the use of the spray gun. Therefore, defendants' failure to warn him of such risk was insignificant.

Likewise, defendants' failure to provide any safeguards at the nozzle of the spray gun was immaterial in this instance, because the risk inherent in placing one's hand in front of the nozzle while the machine was in operation should have been obvious to any user.

For the same reasons we are of the opinion that it was not error for the court to grant summary judgment prior to the filing of answers or objections to the further interrogatories which plaintiff had submitted to defendant Spraying Systems Company, Inc. Plaintiff contends that had these interrogatories been answered, the answers would show defendant's prior knowledge of similar injuries resulting from the use of the same model sprayer. Plaintiff argues also that if the interrogatories were answered they would show whether this defendant, in light of the prior injuries resulting from the usage of that model spray gun, issued any warnings to those who might come into contact with the gun.

In support of its argument plaintiff cites *Lee v. Shor*, 10 N.C. App. 231, 178 S.E. 2d 101 (1970). In that case Judge Vaughn stated:

> [W]e observe that although unanswered interrogatories will not, in every case, bar the trial court from acting on motion for summary judgment [*Washington v. Cameron*, 411 F. 2d 705 (D.C. Cir. 1969)], doing so prior to the filing of objections or answers to the interrogatories in the present case was improper.

10 N.C. App. at 236, 178 S.E. 2d at 104-105.

In the instant case, even if the answers to the further interrogatories submitted by plaintiff had shown what plaintiff alleges they would, they would not have established a triable issue of fact. The interrogatories were aimed at the question of warnings, which we have already determined were not at issue in this case.

In our opinion, the evidence, when considered in the light most favorable to plaintiff, was insufficient to warrant submis-

sion of the case to the jury. Accordingly, the court's judgments granting both defendants' motions for summary judgment are

Affirmed.

Judges WEBB and MARTIN (Harry C.) concur.